UNITED STATES BANKRUPTCY COURT
DISTRICT OF OREGON

**ELIZABETH L. PERRIS**
CHIEF BANKRUPTCY JUDGE

1001 S.W. FIFTH AVENUE, # 700
PORTLAND, OREGON 97204
(503) 326-1536

DIANE K. BRIDGE, LAW CLERK
MARGOT LUTZENHISER, LAW CLERK

March 13, 2008

CLERK, U.S. BANKRUPTCY COURT
DISTRICT OF OREGON

MAR 1 3 2008

LODGED_____REC'D_____
PAID_____DOCKETED___

Anthony V. Albertazzi
1070 NW Bond St. Ste. 202
Bend, OR 97701

Rex K. Daines
1599 State St.
P.O. Box 12829
Salem, OR 97309-0829

    Re:   <u>Hildebrand v. Browning</u>, Adv. No. 07-3171
          Ruling on Trial

Dear Counsel:

    The court had set this afternoon as the time for ruling on the trial in this adversary proceeding. Because of the length of this disposition, the court has decided to rule in writing.

    Plaintiffs seek to deny debtors a discharge for false oaths under § 727(a)(4) and for failure to explain satisfactorily any loss or deficiency of assets to pay liabilities under § 727(a)(5). The court has allowed plaintiffs' motion at the close of trial to amend the complaint to add allegations of false oath relating to the testimony at the trial.[1] The court has also taken judicial notice of the original bankruptcy petition, schedules, and statement of financial affairs (SOFA), the amended SOFA, the date of the first meeting of creditors, and the date this adversary complaint was filed.

    Plaintiffs sold debtors a flower business in La Pine named Floral Fantasies in November 2004. Debtors paid $30,000 down and signed a promissory note to plaintiffs for the remaining $35,000 of the purchase price.

    Within two years, the business was failing, and debtors listed the business for sale. They received two offers to purchase the business. They rejected the first because of its

---

    [1]   The court has limited the amendment to those alleged false statements that counsel listed at the close of trial.

terms. They testified that the second offer, which simply offered to assume the note to plaintiffs, did not result in a sale because plaintiffs would not discuss the offer with them.

Debtors stopped doing business sometime before February 2007. On February 27, 2007, debtors held an auction of the inventory at the store. The sale, which was conducted by an auctioneer who has no apparent ties to debtors, resulted in the sale of all of the inventory for $6,954. Debtors netted $4,528 after paying the auctioneer.

Debtors filed a chapter 7 petition on March 30, 2007. They disclosed in their schedules and SOFA that they had owned the business Floral Fantasies, that it had gone out of business on January 1, 2007, and that plaintiffs were creditors. They did not disclose the auction in response to Question 10 on the SOFA, which asks for a list of property transferred other than in the ordinary course of business within two years before bankruptcy. They did, however, disclose the sale of a vehicle that had occurred nearly a year before bankruptcy.

At their first meeting of creditors, held on May 7, 2007, the trustee asked whether debtors had sold or otherwise transferred anything of value in the previous four years. Mrs. Browning answered "No." Later, she contacted her attorney to disclose the February 2007 auction. Debtors filed an amended SOFA on June 7, 2007, in which they first disclosed the auction of the inventory of the flower business.

Plaintiffs' counsel took debtors' depositions on July 9, 2007. In response to questions about Mrs. Browning's testimony at the § 341(a) meeting regarding the sale of assets in the last four years, Mrs. Browning testified that she thought she had answered truthfully, and that she was nervous and did not remember everything at the time. She also testified that she misunderstood the question, because she understood all of the questions up to the question about the sale or transfer of assets to relate to events occurring after bankruptcy. She testified that, after she left the meeting of creditors, she thought of the auction and contacted her counsel to disclose the auction to him. She testified that she answered truthfully at the § 341(a) meeting, but then later realized that the trustee's question must relate to the auction, too.

Mrs. Browning testified at her deposition that the money from the auction was used to pay the lease on the business property, utilities at the business property, and personal

expenses. Mr. Browning testified at his deposition that the inventory for the business was sold at auction "to pay our bills to keep us living, you know, to buy food, buy gas to get to work." Exh. 4 at 9.

1.  § 727(a)(4)(A)

To deny a debtor a discharge under § 727(a)(4)(A), the plaintiff must show that "(1) the debtor made a false oath in connection with the case; (2) the oath related to a material fact; (3) the oath was made knowingly; and (4) the oath was made fraudulently." In re Roberts, 331 B.R. 876, 882 (9th Cir. BAP 2005). "A false oath may involve a false statement or omission in the debtor's schedules." In re Wills, 243 B.R. 58, 62 (9th Cir. BAP 1999); In re Beaubouef, 966 F.2d 174 (5th Cir. 1992).

Intent must be actual, not constructive. In re Jones, 175 B.R. 994, 1002 (Bankr. E.D. Ark. 1994). Fraudulent intent may be inferred from the actions of the debtor, In re Devers, 759 F.2d 751, 753-54 (9th Cir. 1985), or from the surrounding circumstances. See In re Woodfield, 978 F.2d 516, 518-19 (9th Cir. 1992). Reckless indifference to the truth is not sufficient by itself to establish fraudulent intent, but it can be probative of intent. In re Khalil, 379 B.R. 163, 173 (9th Cir. BAP 2007). Recklessness can be part of the circumstantial evidence that can establish that the debtor acted intentionally. "For instance, multiple omissions of material assets or information may well support an *inference of fraud* if the nature of the assets or transactions suggests that the debtor was aware of them at the time of preparing the schedules and that there was something about the assets or transactions which, because of their size or nature, a debtor might want to conceal." Id. at 175 (emphasis in original).

A statement is material if it relates to "the debtor's business transactions or estate, or concerns the discovery of assets, business dealings, or the existence and disposition of the debtor's property." Wills, 243 B.R. at 62; In re Chalik, 748 F.2d 616, 618 (11th Cir. 1984). "A false statement or omission may be material even if it does not cause direct financial prejudice to creditors." Wills, 243 B.R. at 63. Although omissions or misstatements that relate to assets that have little value may be immaterial, such omissions or misstatements are material "if the omission or misstatement detrimentally affects administration of the estate." Id. Thus, "a discharge may be denied if the omission adversely affects the trustee's or creditors' ability to discover other assets or to fully

Anthony V. Albertazzi
Rex K. Daines
March 13, 2008
Page 4

investigate the debtor's pre-bankruptcy dealing and financial condition." Id. (quoting from 6 Lawrence P. King, Collier on Bankruptcy ¶ 727.04[1][b] (15th ed. Rev. 1998)).

Plaintiffs claim that debtors made a number of false oaths in connection with the case.

   A.   Failure to list the auction in the original SOFA

Debtors failed to list the auction of the inventory from their closed flower business, which had occurred only about a month before bankruptcy, in response to Question 10 of the SOFA, which asks about transfers of assets within two years before the bankruptcy. Although plaintiffs never provided any evidence of this omission, it is undisputed that debtors did not list the auction, and I have taken judicial notice of the original schedules, which shows the omission. Debtors' failure to disclose that auction is a false statement. The false statement was material, as it related to the debtors' business transactions and the disposition of property belonging to debtors.

The question is whether the omission was knowing and fraudulent. There was no explanation of the reason for the omission of information about the auction in the original schedules, or even any discussion of it at the trial.

The evidence fails to show that debtors intentionally and fraudulently omitted the auction from the original schedules. There was no evidence of other omissions or misstatements in the schedules. Debtors did list their ownership of the business and its demise shortly before bankruptcy. It is not logical that debtors would have listed the business and its closure, if they were trying to conceal their sale of the assets of the business, which produced less than $5,000 for debtors. Debtors later filed amended schedules listing the auction, after the § 341(a) meeting and before the trustee or creditors had discovered the omission. Although debtors did list the sale of a vehicle in response to the question on the SOFA, which shows that they understood they needed to disclose sales and transfers of property, the fact that they disclosed the ownership and closure of the business in their original filing weighs against finding that the omission of the auction was intentional and fraudulent. The facts are not indicative of an intent to conceal assets or fraudulently make a false oath.

B.  Mrs. Browning's testimony at the § 341(a) meeting

Although plaintiff did not provide an admissible copy of the transcript of the § 341(a) meeting as evidence, the unofficial transcript was an exhibit to Mrs. Browning's deposition, and the transcript of that deposition along with its exhibits was admitted. The unofficial transcript shows that Mrs. Browning answered "no" to the trustee's question about whether debtors had sold or otherwise transferred anything of value in the last four years other than a listed vehicle. In fact, debtors had sold the inventory of the flower business a month before bankruptcy. The response to the trustee's question was false, and it was also material for the same reason it was material when omitted from the original schedules.

Again, the question is whether the false statement was knowing and fraudulent. I look at three sources of evidence to help decide that question.

First, Mrs. Browning's later deposition testimony. There, she was asked whether the answer to the trustee's question had been truthful, and she answered that it had. She explained that she misunderstood the question at the § 341(a) meeting, thinking it related only to transfers or sales of assets after bankruptcy. She testified that she was nervous at the § 341(a) meeting and did not remember everything. She also testified that, after the meeting of creditors, she thought about it and realized the trustee's question must have related to the auction as well. So she contacted her attorney and told him about the auction. The SOFA was amended shortly thereafter.

Second, the surrounding circumstances. In their original schedules, debtors disclosed that they had owned the business Floral Fantasies, and that it had gone out of business in early January 2007, about two months before bankruptcy. They listed the Hildebrands as creditors on their schedules. It would seem odd, if debtors were intending to defraud by failing to disclose the auction, that they would list the creditors to whom they still owed money for the business, and would disclose the operation and closing of the business.

The other circumstance is that, before the trustee learned about the auction, debtors on their own initiative contacted their attorney and disclosed the auction, resulting in the filing of an amended SOFA that listed the sale. This amendment occurred before this adversary proceeding was filed. Debtors' unforced

disclosure of the auction is indicative of a mistake or misunderstanding rather than a knowing and fraudulent falsehood.

Third, the testimony at trial. Mrs. Browning testified at trial that, after the § 341(a) meeting, she contacted their attorney to tell him about the auction because she was prompted by her conscience. She also testified that she had understood the question about sale or transfer of assets as relating to post-petition events. Having a pang of conscience is an indication that Mrs. Browning knew that her prior conduct was wrong, that the testimony had been incorrect.

Viewing all of the circumstances, however, I conclude that Mrs. Browning's testimony at the § 341(a) meeting, while it was false and material, was a result of a lack of attention to the question and a lack of concern for the accuracy of the information she was imparting. My impression of these debtors is that they are reckless about providing fully accurate information relating to their bankruptcy, but that they were not trying to hide the fact or results of the auction. Especially in light of the relatively minimal proceeds received from the auction and their disclosure of their ownership of the business, an attempt to conceal that the auction had occurred makes little sense. Further, debtors disclosed the auction after the § 341(a) meeting but before their deposition and before this adversary proceeding was filed. Knowing, fraudulent concealment also makes little sense in light of the disclosure of the ownership and closure of the business and eventual unforced disclosure of the auction. There are no other known omissions from the schedules that would indicate an intent to hide assets. I conclude that Mrs. Browning's § 341(a) testimony was not knowing and fraudulent.

C. <u>Deposition testimony of Mrs. Browning</u>

Third, plaintiffs claim that Mrs. Browning made false oaths in her deposition testimony when she testified that her negative answer to the trustee at the § 341(a) meeting about the sale or transfer of assets was correct and not a lie. Again, the testimony that the answer had been correct was inaccurate. That does not mean that it was a lie in the sense of having an intent to deceive.

My observation of Mrs. Browning leads me to conclude that her deposition testimony was consistent with her explanation for the answer to the trustee's question - that she misunderstood the question. In her deposition, after she testified that she did not think she had told a lie at the § 341(a) meeting, Mrs.

Browning testified that "[t]hat's why I contacted the attorney to say, yes, we did sell the stuff at the auction so they would be aware of that." Exh. 3 at 19:23 - 20:1. Therefore, even though the testimony was not accurate, I do not find that it was knowingly and fraudulently untrue.

### D. Testimony at trial

Plaintiffs amended their complaint to add allegations of knowing false statements under oath at trial.

#### i. Mrs. Browning

Plaintiffs seek denial of discharge for Mrs. Browning's testimony at the trial that (1) she did not remember why she amended her bankruptcy schedules; (2) that she contacted her attorney promptly after the § 341(a) meeting about her omission from the bankruptcy schedules of the information about the auction; and (3) that she does not remember signing the amended schedules.

With regard to the amendment of the bankruptcy schedules, Mrs. Browning testified that she does not remember signing the amended schedules. She did not testify that she did not know why she amended the schedules. Because she did not testify that she did not know why she amended the schedules, this allegation of false testimony fails. As to her failure to recall having signed the amended schedules, I do not find that testimony to be intentionally false. Mrs. Browning testified that she recalled having amended her schedules. That does not mean that she necessarily recalls having signed those schedules. It is possible that she signed papers without fully understanding what they were, even if she read them and believed all of the information contained in them was true and correct.

As for the second allegedly false statement at trial, I do not recall Mrs. Browning testifying that she contacted her attorney promptly after the § 341(a) meeting about the auction. She did testify that she contacted counsel after the meeting - but it is unclear how long after - to tell him about the auction. It is apparent that she contacted counsel at some time about the auction, because debtors filed amended schedules disclosing the auction. Further, if Mrs. Browning testified that she contacted her counsel promptly after the § 341(a) meeting, there is no evidence indicating that the testimony is false. The § 341(a) meeting was held on May 7; the amended SOFA was filed on June 7. There is no explanation for the delay. It could just as well

have been caused by counsel as having been caused by debtors failing to contact counsel right away. Debtors and their counsel are in different cities. Some of the delay could have been caused by the time consumed by counsel's mailing to debtors of the amended schedules and debtors' mailing of the signed schedules back to counsel.

I am not convinced that any of the trial testimony about which plaintiffs complain was knowingly and fraudulently false.

      ii.  <u>Mr. Browning</u>

Plaintiffs seek to deny discharge to Mr. Browning for his testimony at the trial that he did not benefit personally from the proceeds of the sale of the business inventory and that debtors spent some of the auction proceeds to pay off a yellow pages add for the business. They argue that either his trial testimony was false or his deposition testimony was false, where he testified as follows:

    Q:    What happened to it [the business inventory]?

    A.    We had an auction and sold it to pay our bills to keep us living, you know, to buy food, buy gas to get to work.

Exh. 4 at 8:15-19.

Mr. Browning testified at trial that the money from the auction was used to pay the lease on the business building, pay utilities for the building, pay off the yellow pages advertising for the business, and to pay personal living expenses. He testified that he had learned about the use of the proceeds to pay business expenses after his deposition, in which he had testified that the money had been used to pay living expenses. He also testified he did not benefit from the proceeds of the auction but that some of them were used for living expenses.

The deposition testimony about the use of the proceeds from the auction was in response to a question about what had happened to the business inventory. He testified that the inventory was sold at auction and used to pay living expenses. He was not specifically asked what the proceeds were used for; he volunteered that information. He testified at trial that he did not learn that some of the proceeds had been used to pay business expenses until after his deposition. I do not find this testimony to be knowingly and fraudulently false.

2. § 727(a)(5)

The court may deny a debtor a discharge if the debtor has failed to explain satisfactorily any loss of assets or deficiency of assets to meet the debtor's liabilities. § 727(a)(5). In establishing that the debtor failed satisfactorily to explain a loss of assets, the plaintiff need not prove an intent to conceal by the debtor. In re Ridley, 115 B.R. 731, 735 (Bankr. D. Mass. 1990). Rather, once the plaintiff has established a loss of assets, the debtor must explain the loss. See In re Devers, 759 F.2d 751, 754 (9th Cir. 1985). Vague and indefinite explanations of losses that are based on estimates uncorroborated by documentation are generally unsatisfactory. In re Chalik, 748 F.2d 616, 619 (11th Cir. 1984). In addition, courts have taken a particularly jaundiced view of self-indulgent lifestyles as constituting a satisfactory explanation for the dissipation of large sums of cash. See In re Dolin, 799 F.2d 251 (6th Cir. 1986); In re Reed, 700 F.2d 986 (5th Cir. 1983); In re Johnson, 68 B.R. 193 (Bankr. D. Or. 1986).

Plaintiffs' theory seems to be that, two years before they filed bankruptcy, debtors purchased Floral Fantasies, which included a sizable amount of inventory. By the time they filed bankruptcy, however, they had sold the remaining inventory for approximately $6,000 (the net to debtors was less). According to plaintiffs, debtors turned down two offers for the business that included assumption of the debt, with no good reason. Instead, they let the business fail and sold the remaining inventory for a minimal amount. This, according to plaintiffs, is a loss of an asset without explanation.

First, I do not think that § 727(a)(5) was meant to address a failure to obtain the highest possible price for the sale of an asset. Although debtors probably should have sold the business when offers were made for it, their failure to do that does not mean that there are missing assets for which there is no explanation.

Second, the facts do not support the theory that the refusal to sell shows a lack of explanation for the loss of assets. First, Mrs. Browning testified that she had two offers to purchase the property: one that offered cash but no assumption of debt, and one that offered assumption of the debt only. The latter offer was communicated to plaintiffs, who refused to talk to debtor about the offer because they had hired counsel.

There was evidence from Carmen Macy that she had offered $35,000 plus assumption of the note to purchase the business in February or March of 2006. This is the offer that Mrs. Browning testified was for cash only, not for assumption of the debt. There was no documentation of the offer, even though Mrs. Browning testified that she signed a document rejecting the offer because it did not contain an assumption of the debt. I believe that Mrs. Browning believed that the offer did not include assumption of the debt. It would make no sense for her to turn down such an offer if it did contain an assumption of the debt. Without a copy of the written offer in evidence, the court cannot ascertain the actual terms of the offer or conclude that Mrs. Browning's understanding regarding the terms was unreasonable.

There is no evidence to support the argument that some of the inventory disappeared without explanation. This argument seems to be based solely on the fact that the auction of the remaining inventory in February 2007 brought proceeds of only about $6,000, when plaintiffs thought the inventory should be worth much more. However, debtors testified, and there was no evidence to contradict that testimony, that all of the remaining inventory was sold at the auction. Some of the inventory had been sold during the two years debtors owned the business. Plaintiffs have not shown the value of the inventory at the time debtors purchased the business. The value of $51,700 that is listed on Exh. 3 p.100 was apparently a value determined by plaintiffs, and it is not clear where that number came from. There was testimony at trial that some of the inventory was valued at wholesale and some at retail; it is not clear whether the $51,700 comes from the inventory taken shortly after the sale, and whether it includes some retail prices, which would not reflect the true value of the inventory from a business ownership standpoint. I am not convinced that there was inventory that was lost or concealed at the time of the auction.

If plaintiffs' concern is that the price obtained at the auction was inadequate, they should try to get the trustee to file a fraudulent transfer claim. However, there is no evidence that the auction was other than an arms length transaction or that it disposed of anything less than the entirety of the remaining inventory.

I conclude that plaintiffs have not demonstrated that debtors should be denied a discharge under § 727(a)(5).

Anthony V. Albertazzi
Rex K. Daines
March 13, 2008
Page 11

CONCLUSION

    I conclude that plaintiffs have not proved that debtors made knowing, false oaths in connection with this case or that they have failed to explain satisfactorily any loss of assets. Mr. Daines should submit the judgment for debtors within 10 days of the date of this letter.

                                      Very truly yours,

                                        ELIZABETH L. PERRIS
                                        Bankruptcy Judge

cc:   UST
       Michael Batlan